UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                  :

UNITED STATES OF AMERICA,             :
                                  :

                 -v-                :           21 Cr. 40 (JPC)
                                  :

                                  :           <u>OPINION AND ORDER</u>

RAUL GUTIERREZ-CAMPOS,           :
                                  :

                Defendant.        :
                                  :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

In April 2021, Defendant Raul Gutierrez-Campos moved to dismiss the Information, which charges him with one count of illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). On January 31, 2022, the Court granted that motion and dismissed the Information. *United States v. Gutierrez-Campos* ("*Gutierrez-Campos I*"), No. 21 Cr. 40 (JPC), 2022 WL 281582 (S.D.N.Y. Jan. 31, 2022). On appeal, the Second Circuit vacated the dismissal and remanded for this Court to determine whether Gutierrez-Campos had any "available" administrative remedies, as that term is used in Section 1326(d)(1). *United States v. Gutierrez-Campos* ("*Gutierrez-Campos II*"), No. 22-438, 2024 WL 3856920 (2d Cir. Aug. 16, 2024).

On remand, Gutierrez-Campos has renewed his motion to dismiss, arguing that administrative remedies were unavailable to him during his immigration proceedings and thus that he was not required to exhaust them. The Court now determines that Gutierrez-Campos did have available administrative remedies that he failed to exhaust, but dismisses the Information for the reasons set forth in *Gutierrez-Campos I*.

## I. Background

### A.    Facts

The Court assumes familiarity with the factual background relevant to this case, which was set out in *Gutierrez-Campos I*, *see* 2022 WL 281582, at *1-3, and summarizes the relevant facts below.

Gutierrez-Campos, a citizen of Mexico, entered the United States as a child in 1985 or 1986.  Dkt. 20 ("Wheeler Decl."), Exh. A ("Gutierrez-Campos Decl.") ¶ 4.  Many years later, in December 1999, Gutierrez-Campos was convicted in New York Supreme Court, New York County, of attempted criminal sale of a controlled substance, resulting in a sentence of one year's imprisonment.  Wheeler Decl. ¶ 8, Exh. B.  While Gutierrez-Campos was in state custody, an officer with the former Immigration and Naturalization Service ("INS") interviewed him and lodged a detainer with the New York City Department of Corrections.  Wheeler Decl. ¶¶ 9-10, Exhs. C, D.  On December 28, 1999, Gutierrez-Campos requested a hearing before the immigration court to determine whether he may remain in the United States.  Wheeler Decl. ¶ 9, Exh. C.

After completing his state sentence, Gutierrez-Campos was transferred to INS custody and served with a copy of a warrant for his arrest, along with a form advising that he would be detained pending his removal proceedings and any removal.  Wheeler Decl., Exh. F.  On July 18, 2000, Gutierrez-Campos appeared in person for a removal hearing before an immigration judge (the "IJ").  Wheeler Decl. ¶¶ 16-17, Exhs. J, K.  The hearing was conducted in English with the assistance of a Spanish-language interpreter.  Wheeler Decl., Exh. K (recording); Dkt. 55-1 ("Removal Tr.").  At the hearing, the IJ explained the nature of immigration court and advised Gutierrez-Campos of his right to appeal an adverse decision to the Board of Immigration Appeals and to the federal courts.  Removal Tr. at 2-3.  Gutierrez-Campos responded "[y]es" in

acknowledgement. *Id.* at 3. The IJ also confirmed service and receipt of Gutierrez-Campos's immigration forms, including the Notice to Appear, the notice of appeal form, and proof of his conviction. *Id.* Gutierrez-Campos again responded "[y]es." *Id.*

After Gutierrez-Campos admitted the factual allegations in the Notice to Appear, the IJ found him "removable as charged." *Id.* at 4. The IJ then inquired whether the Government was aware of any relief available to Gutierrez-Campos, to which the Government responded "[n]o." *Id.* After ordering Gutierrez-Campos removed to Mexico, the IJ asked him whether he understood the decision. *Id.* Gutierrez-Campos responded "[y]es." *Id.* at 4-5. The IJ then asked Gutierrez-Campos whether he wished to appeal the IJ's decision. *Id.* at 5. Gutierrez-Campos answered "[n]o." *Id.*; *see also* Wheeler Decl., Exh. L (IJ's order of removal indicating appeal was waived).

Gutierrez-Campos was removed to Mexico on July 25, 2000. Dkt. 32 at 6. The Government alleges that, sometime following his removal, Gutierrez-Campos returned to the United States and, on February 1, 2020, Gutierrez-Campos was arrested in the Bronx for assault in the third degree, in violation of New York Penal Law Section 120.00(1). Dkt. 1 ¶ 4.

**B.    Procedural History**

On October 19, 2020, Gutierrez-Campos was charged in a criminal complaint with illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), and an arrest warrant was issued. Dkts. 1, 2. He was arrested on December 1, 2020 by federal authorities, and, on January 19, 2021, he waived indictment and pleaded not guilty to the charge of illegal reentry. Dkts. 7, 8, 12. On April 16, 2021, Gutierrez-Campos moved to dismiss the Information on the ground that the IJ's order of removal was invalid. Dkts. 19-20. Gutierrez-Campos argued that deficiencies in the Notice to Appear deprived the IJ of jurisdiction. Dkt. 20-1 at 23-39. He further argued that his December 1999 state court conviction for aggravated sale of a controlled substance did not qualify as an

aggravated felony, and thus he was eligible to apply for voluntary departure yet the IJ did not afford him the opportunity to do so. *Id.* at 8-23.

The Court granted his motion and dismissed the Information on January 31, 2022. *Gutierrez-Campos I*, 2022 WL 281582. The Court first rejected Gutierrez-Campos's argument that the immigration court lacked jurisdiction based on supposed deficiencies in the Notice to Appear. *Id.* at *4-9. The Court then reasoned that Gutierrez-Campos was eligible to seek voluntary departure in immigration court because his New York conviction did not qualify as an aggravated felony under the immigration laws at the time of his removal proceeding. *Id.* at *12-15. The Court further concluded that the IJ's failure to inform Gutierrez-Campos of his right to apply for voluntary departure constituted a fundamental procedural error, *id.* at *10-16, that Gutierrez-Campos was prejudiced by that error because there was a reasonable probability that he would have sought and received voluntary departure from the immigration court, *id.* at *16-17, and that, although Gutierrez-Campos did not seek administrative or judicial appeal of the question of his eligibility for voluntary departure, Second Circuit precedent excused that failure to exhaust because Gutierrez-Campos did not knowingly and intelligently waive his right to appeal, *id.* at *18-20.

On August 16, 2024, the Second Circuit vacated this Court's dismissal of the Information and remanded for further proceedings. *Gutierrez-Campos II*, 2024 WL 3856920. The Second Circuit "express[ed] no view" about this Court's interpretation of Second Circuit precedent, nor "decide[d] whether Gutierrez-Campos satisfied [Section 1326(d)'s] second and third requirements." *Id.* at *2. Instead, the Second Circuit "remand[ed] for the district court to revisit its statutory analysis." *Id.* Although "'the parties agree' that Gutierrez-Campos 'has not exhausted his administrative remedies,'" the Second Circuit explained that it was "not clear whether the

district court—having concluded that Gutierrez-Campos did not exhaust any administrative remedies—determined that such remedies were 'available' as that term is provided in 8 U.S.C. § 1326(d)(1)." *Id.* at *1-2 (quoting *Gutierrez-Campos I*, 2022 WL 281582, at *18). The Second Circuit accordingly remanded for this Court to conduct "this antecedent statutory analysis." *Id.* at *2. The mandate issued on October 7, 2024. Dkt. 63.

After remand, on November 25, 2025, Gutierrez-Campos renewed his motion to dismiss the Information by filing a supplemental memorandum of law in support of that motion. Dkt. 66 ("Motion"). The Government opposed on January 21, 2025, Dkt. 71 ("Opposition"), and Gutierrez-Campos replied on February 10, 2025, Dkt. 74 ("Reply").

## II.  Legal Standard

Under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an information due to a defect, including for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). A defendant may attack an illegal reentry charge by collaterally challenging the validity of the underlying removal order upon which the charge is predicated. *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004); *see also United States v. Taveras*, 504 F. Supp. 3d 272, 278 (S.D.N.Y. 2020) ("An element of the offense of illegal reentry after deportation or removal in violation of 8 U.S.C. § 1326 is that the defendant was previously deported in such a manner that complied with due process."). The mechanism for challenging the validity of a prior removal order, which was first articulated by the Supreme Court in *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-39 (1987), has been codified at 8 U.S.C. § 1326(d).

Under Section 1326(d), a defendant seeking to collaterally attack an underlying removal order must demonstrate that (1) the defendant "exhausted any administrative remedies that may have been available to seek relief against the order," (2) the prior deportation proceedings

"deprived [the defendant] of the opportunity for judicial review," and (3) "[t]he entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Each of the statute's three requirements are mandatory and must be satisfied. *United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021) ("The requirements are connected by the conjunctive 'and,' meaning defendants must meet all three."); *accord United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).

### III.  Discussion

In *Gutierrez-Campos I*, this Court concluded that Gutierrez-Campos met the second and third requirements of Section 1326(d) and was excused from meeting the first. 2022 WL 281582, at *10-20. Previously, the parties agreed that Gutierrez-Campos has not exhausted his administrative remedies. *See id.* at *18. In remanding the case, the Second Circuit instructed this Court to determine whether those remedies were indeed "available" to Gutierrez-Campos, as that term is used in Section 1326(d)(1). *Gutierrez-Campos II*, 2024 WL 3856920, at *2. For reasons that follow, the Court concludes that administrative remedies were available to Gutierrez-Campos, yet dismisses the Information for reasons articulated in *Gutierrez-Campos I*.

### A.    Availability of Administrative Remedies

Gutierrez-Campos "may not" collaterally attack his prior removal order in this proceeding "unless" he demonstrates that he "exhausted any administrative remedies *that may have been available* to seek relief against the order." 8 U.S.C. § 1326(d)(1) (emphasis added). This statutory text requires a noncitizen to exhaust only available remedies, not unavailable ones, before collaterally challenging a removal order.

"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 737-38 (2001)). Addressing analogous statutory

language in the Prison Litigation Reform Act ("PLRA"), the Supreme Court in *Ross* articulated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.[1]  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44.  Finally, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.  These three circumstances are not exhaustive, and depending on the facts of the case, other circumstances may exist in which an administrative remedy, though technically available, is incapable of use to obtain relief.  *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016) (noting that "the three circumstances discussed in *Ross* do not appear to be exhaustive, given the Court's focus on three kinds of circumstances that were 'relevant' to the facts of that case," but declining to "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use"); *see also Rucker v. Giffen*, 997 F.3d 88, 90, 93-94 (2d Cir. 2021) (finding an administrative remedy to be "unavailable" where the inmate was hospitalized with a critical

---

[1] The PLRA requires that inmates "exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross*, 578 U.S. at 635 (quoting 42 U.S.C. § 1997e(a)).  Neither the Supreme Court nor the Second Circuit has held that the standards set forth in *Ross* apply, *mutatis mutandis*, to the exhaustion requirement in Section 1326(d)(1).  Given the similarity in language between the two statutory provisions, however, as well as the fact that both *Palomar-Santiago* and *Gutierrez-Campos II* favorably cited *Ross*, the Court looks to *Ross* and its progeny in determining whether Gutierrez-Campos had any available administrative remedies.  *See Palomar-Santiago*, 593 U.S. at 326-28; *Gutierrez-Campos II*, 2024 WL 3856920, at *2.

medical condition during the five-day window to file a grievance and the jail refused to process any grievance filed after that period).  The "test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311-12 (2d Cir. 2020) (alteration adopted and internal quotation marks omitted).

Gutierrez-Campos argues that the IJ committed two errors that "rendered administrative review of the denial of voluntary departure unavailable."  Motion at 15.  First, Gutierrez-Campos argues that the IJ erred by failing to inform him of the availability of applying for voluntary departure.  *Id.* at 13-14.  In *Gutierrez-Campos I*, this Court concluded that the IJ's failure to inform Gutierrez-Campos of his right to seek voluntary departure was a fundamental procedural error that prejudiced Gutierrez-Campos.  2022 WL 281582, at *10-17.  Second, Gutierrez-Campos argues that the IJ erred by "fail[ing] . . . to ensure that his no-relief ruling was translated into Spanish."  Motion at 14-15.  After the IJ informed Gutierrez-Campos that he was found to be "removable as charged," the IJ asked if "the government [was] aware of any relief," to which the Government responded "[n]o."  Removal Tr. at 4.  The IJ's question to the Government, and the Government's negative response, were not translated into Spanish for Gutierrez-Campos.  *Id.*  Immediately after this exchange, the IJ informed Gutierrez-Campos that he was ordered removed from the country. *Id.*

Gutierrez-Campos argues that these two mistakes "can be analogized to *Ross*'s second ('opaque') and third ('misrepresentation') exceptions."  Motion at 13.  With respect to the second *Ross* category, he claims that the "errors made administrative appeal 'opaque'—that is, so 'confusing' that no reasonable noncitizen with Gutierrez-Campos's particular limitations could use it."  *Id.* at 15.  Those limitations are that Gutierrez-Campos was a non-English speaker, could

not read the papers that were given to him, and was proceeding without representation. *Id.*; *see* Gutierrez-Campos Decl. ¶ 7; *Gutierrez-Campos I*, 2022 WL 2811582, at *20. Even with those limitations, however, the IJ's mistakes did not render the administrative appeal process "so opaque that it bec[ame], practically speaking, incapable of use." *Ross*, 578 U.S. at 643. The Supreme Court explained that *Ross*'s second category includes circumstances in which "no ordinary [noncitizen] can discern or navigate" the "mechanism" that "exists to provide relief," or in which the "rules are so confusing that no reasonable [noncitizen] can use them," or in which the remedy is "essentially unknowable." *Id.* at 644 (alteration adopted and internal quotation marks omitted). *Ross*'s second category thus focuses on the *process* for obtaining relief, not on the *result* of that process. *See Williams*, 829 F.3d at 124 (concluding that an administrative remedy was "opaque" when "the regulations d[id] not adequately outline the process to appeal or otherwise exhaust administrative remedies"). Each of the Court's three elucidatory situations describe barriers to understanding or accessing the procedural mechanism for invoking a formally available remedy: in one, a reasonable person might know that relief is theoretically available, but could not identify the procedure for obtaining that relief; in another, even if a reasonable person could identify the procedure, he could not understand the rules governing that procedure such that the mechanism for relief becomes unusable; and in the last, a reasonable person would not be aware that relief is even available and so would have no reason to seek out the process to obtain that relief. In the context of relief from a removal order, the administrative appeal process may be "so opaque" that it becomes unavailable when, for example, (1) a reasonable noncitizen would be aware that an appeal to the BIA is a theoretical possibility, but would lack any way of knowing that he must complete a Form EOIR-26 to initiate the appeal; (2) a reasonable noncitizen would be aware of the need to submit a Form EOIR-26 to appeal an IJ's decision, but the instructions on the form are

9

so incomplete and self-contradictory such that no reasonable person could make sense of them; or (3) a reasonable noncitizen would lack any way of knowing that he could appeal the removal order to the BIA.[2]

Here, the IJ explicitly informed Gutierrez-Campos of the right to appeal and asked him whether he understood that right—an exchange that was translated into Spanish.  Removal Tr. at 3.  And Gutierrez-Campos confirmed, in Spanish, that he understood he had a "right to appeal any decision . . . to a higher court in Washington, D.C., and even after that, through the federal court system of this country."  *Id.*  Neither of the IJ's two aforementioned errors—*i.e.*, failing to inform Gutierrez-Campos of his right to seek voluntary departure and failing to ensure that his no-relief ruling was translated into Spanish—affected Gutierrez-Campos's understanding of the availability of, or process for, appealing the IJ's decision of removal.  To be sure, either or both of those errors may have played a part in causing Gutierrez-Campos to believe that "there was no point to an appeal because the judge said there was no other outcome but deportation."  Gutierrez-Campos Decl. ¶ 9.  But Gutierrez-Campos does not argue that an appeal would indeed have been futile, and noncitizens must exhaust available administrative remedies even if they believe that those remedies would be ineffective or futile, *see Rodriguez v. Furco*, No. 19 Civ. 3694 (CS), 2021 WL 6064697, at *5 (S.D.N.Y. Dec. 21, 2021) (discussing a prisoner's exhaustion requirements under the PLRA); *Galberth v. Washington*, No. 14 Civ. 691 (KPF), 2017 WL 3278921, at *10 (S.D.N.Y. July 31, 2017) (collecting cases to support the conclusion that "[w]here courts have been presented with inward-looking justifications for a failure to exhaust, which are based in a prisoner's subjective sense of what was available, such justifications have been rejected"), *aff'd*, 743 F. App'x 479 (2d Cir. 2018).  *See Green Haven Prison Preparative Meeting of Religious Soc'y of*

---

[2] These hypothetical circumstances are meant to be only illustrative, not exhaustive.

*Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021) ("The bar for the availability of remedies, however, is low.  To constitute an 'available' remedy, a process requires only 'the *possibility* of some relief.'" (quoting *Ross*, 578 U.S. at 643)).  Moreover, by explaining that he chose not to appeal because of its perceived ineffectiveness, Gutierrez-Campos acknowledges that he understood the appellate procedure existed.  *See* Gutierrez-Campos Decl. ¶ 9.  The IJ's errors may have caused Gutierrez-Campos to believe that an appeal would not have resulted in a favorable outcome, or they might have given Gutierrez-Campos a reason not to appeal, but they did not render the possibility of an appeal "so opaque that it bec[ame], practically speaking, incapable of use."  *Ross*, 578 U.S. at 643.

With respect to *Ross*'s third category, Gutierrez-Campos argues that the IJ's "errors of omission were tantamount to 'misrepresentations' about the scope of appeal."  Motion at 15.  The Court is not persuaded.  In *Ross*, the Supreme Court explained that an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  578 U.S. at 644.  Government officials might, for example, "misle[ad] the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process," or "misle[ad] a prisoner into thinking that he had done all he needed to initiate the grievance process."  *Id.* at 644 n.3 (alterations adopted and internal quotation marks omitted).  An administrative remedy may therefore be unavailable when "a similarly situated individual of ordinary firmness . . . is informed by a corrections officer that a grievance procedure or potential remedy is unavailable."  *Edwards v. Arocho*, 125 F.4th 336, 348 (2d Cir. 2024) (internal quotation marks omitted).  Just as with *Ross*'s second circumstance, the third focuses on access to process—rather than correctness of outcome— to determine whether administrative remedies were functionally available.  This exception does

not extend to cover an "immigration judge's error on the merits," because such an error does not impede a noncitizen's ability to pursue review through established channels—"further administrative review, and then judicial review if necessary, could fix that very error." *Palomar-Santiago*, 593 U.S. at 328. Rather, the types of misrepresentations contemplated in *Ross*'s third category concern those that go to the existence of the remedy itself (in this case, the right to appeal) or the procedures required to invoke it. Here, "[t]here was no misrepresentation by the IJ as to the existence of a right to appeal or as to the rules or procedural steps governing such appeals." *United States v. Portillo-Gonzalez*, 80 F.4th 910, 920 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1128 (2024). To the contrary, the IJ, in a translated statement, advised Gutierrez-Campos of his right to appeal an adverse ruling. Removal Tr. at 3. And even if the IJ's errors affected Gutierrez-Campos's perception of his chances of success on appeal, he was required to exhaust even administrative remedies that he perceived to be pointless. *See Rodriguez*, 2021 WL 6064697, at *5. Although the IJ's omissions compromised the fundamental fairness of the removal proceedings—as this Court extensively discussed in *Gutierrez-Campos I*—they do not establish that administrative remedies were not "available" as that term is used in Section 1326(d)(1).

Moving away from the ordinary meaning of "available" and *Ross*'s discussion of that term in the statutory context, Gutierrez-Campos additionally argues that a "straightforward application of *Mendoza-Lopez* . . . resolves this case." Motion at 8. In *Mendoza-Lopez*, the Supreme Court held that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." 481 U.S. at 839. That conclusion flowed readily from the general principle that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of

the administrative proceeding." *Id.* at 837-38.  In *Mendoza-Lopez*, the noncitizens "were deprived of judicial review of their deportation proceeding" because the "Immigration Judge permitted waivers of the right to appeal that were not the result of considered judgments by [the noncitizens], and failed to advise [the noncitizens] properly of their eligibility to apply for suspension of deportation." *Id.* at 840.  The Supreme Court concluded that those "fundamental procedural defects . . . rendered direct review of the Immigration Judge's determination unavailable" to the noncitizens, and thus the deportation proceeding could not be used to support a criminal conviction. *Id.* at 841-42.

According to Gutierrez-Campos, *Mendoza-Lopez* stands for the proposition that "where a 'fundamental procedural defect' comprises a noncitizen's 'right to appeal' to the BIA and results in a waiver of appeal that is not 'considered and intelligent,' administrative appeal becomes 'unavailable.'"  Reply at 5 (alterations adopted) (quoting *Mendoza-Lopez*, 481 U.S. at 840-42).  In other words, Gutierrez-Campos argues that an invalid waiver of an administrative appeal automatically renders that appeal not "available," as that term is used in Section 1326(d)(1).  The Court declines to adopt such an expansive reading of *Mendoza-Lopez*.  That case addressed whether due process defects that effectively foreclose judicial review operate to bar the Government from using a removal order in a subsequent prosecution—an inquiry subsequently codified in Sections 1326(d)(2) and (3), *see United States v. Crown*, No. 99 Cr. 1044 (AGS), 2000 WL 364890, at *5 (S.D.N.Y. Apr. 10, 2000)—not whether an appeal remains functionally capable of use when it is invalidly waived.  *Mendoza-Lopez*, 481 U.S. 828.[3]

---

[3] Although the Supreme Court in *Mendoza-Lopez* wrote that "[t]he fundamental procedural defects of the deportation hearing . . . rendered direct review of the Immigration Judge's determination *unavailable* to respondents," 481 U.S. at 841 (emphasis added), the Supreme Court was not focused on the word "available" as it is used in Section 1326(d)(1), and courts "don't read precedents like statutes," *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 819 (6th Cir. 2015).

As mentioned, "the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained.'" *Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 737-38); *see also Webster's New World College Dictionary* 94 (3d ed. 1996) (defining "available" as "that one can avail oneself of; that can be used; usable"). When someone knows that an administrative procedure exists—here, the right to appeal—but chooses not to avail himself of that procedure without fully understanding that decision, the administrative procedure nevertheless "is accessible" and still "capable of use" to provide relief.[4] The person's uninformed decision not to make use of the administrative procedure does not strip the procedure of its capability for use.

Gutierrez-Campos essentially argues that a poorly understood remedy is incapable of use. Not so. To interpret "available" as turning on an individual's subjective understanding would transform Section 1326(d)(1) into an inquiry not about whether the remedy was capable of use, but about whether the individual meaningfully engaged with it. An administrative remedy is "available" where it exists and is procedurally accessible, as *Ross* outlined, regardless of whether the noncitizen appreciated its significance at the time of the waiver. *See United States v. Mejia*, No. 24 Cr. 275 (VB), 2024 WL 4604644, at *7 (S.D.N.Y. Oct. 29, 2024) (concluding that "administrative remedies were available to defendant and he did not exhaust these remedies," even though the defendant's waiver of his right to appeal was not knowing and voluntary, because the defendant was informed of his right to appeal and "there was nothing that functionally prevented

---

[4] Of course, if a noncitizen's waiver was invalid because he was misled as to the existence or rules of the appeals process, then such misrepresentation may render the administrative remedy unavailable. *See Ross*, 578 U.S. at 644. In such a case, however, it is not the invalid waiver that renders the appellate process unavailable, but rather the official's misrepresentation. In this case, as described above, there was no comparable misrepresentation "as to the existence or rules of the [administrative appeal] process." *Id.* at 644 n.3 (internal quotation marks omitted).

[the] defendant from pursuing administrative remedies"). As discussed above, the statutory requirement to exhaust "available" remedies turns on the functional accessibility of those remedies—not on the litigant's own understanding or choices.

In sum, the administrative remedy of an appeal was available to Gutierrez-Campos. As the parties agree, he failed to exhaust that remedy.

## B.    Invalidity of Removal Order

For the same reasons as discussed in *Gutierrez-Campos I*, the Court concludes that Gutierrez-Campos's removal order was invalid because the IJ did not provide him an opportunity to apply for voluntary departure prior to entering the removal order. Section 1326(d)(3)'s requirement—that "the entry of the order was fundamentally unfair"—is met because the IJ's failure to inform Gutierrez-Campos of the availability of voluntary departure was a fundamental procedural error and the error prejudiced Gutierrez-Campos. *Gutierrez-Campos I*, 2022 WL 281582, at *10-17; *see Copeland*, 376 F.3d at 71-72. Gutierrez-Campos is excused from satisfying the exhaustion requirement in Section 1326(d)(1) because his waiver of his right to appeal the IJ's removal order was not knowing or intelligent. *Gutierrez-Campos I*, 2022 WL 281582, at *18-20; *see United States v. Calderon*, 391 F.3d 370, 374-76 (2d Cir. 2004); *United States v. Sosa*, 387 F.3d 131, 138-39 (2d Cir. 2004).[5] And Gutierrez-Campos's invalid waiver, combined with the

---

[5] While the Court concludes that this result is compelled by *Sosa*—which establishes that Section 1326(d)(1)'s exhaustion requirement may be excused as a *constitutional matter* when the noncitizen's waiver of appeal was not knowing and intelligent—the Court again notes the apparent tension between this conclusion and the Supreme Court's decision in *Palomar-Santiago*—which confronted Section 1326(d) as a matter of *statutory construction*—as well as the possibility of incongruous results. *See Gutierrez-Campos I*, 2022 WL 281582, at *19 ("While the Second Circuit may decide to revisit its earlier decisions excusing section 1326(d)(1)'s administrative exhaustion requirement where the noncitizen's waiver of appeal was not knowing and intelligent, especially following *Palomar-Santiago*, the Court nevertheless must follow that precedent, which remains binding on this Court and all other district courts in this Circuit.").

scant one-week period in which he could have filed a habeas petition, deprived him of the opportunity for judicial review under Section 1326(d)(2). *Gutierrez-Campos I*, 2022 WL 281582, at *20.

## IV. Conclusion

For the foregoing reasons, Gutierrez-Campos's motion to dismiss the Information is granted, and the Information is dismissed.

SO ORDERED.

Dated: May 9, 2025
     New York, New York                                   _____
                                                   JOHN P. CRONAN
                                   United States District Judge